UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23243-CIV-HUCK/O'SULLIVAN

JUAN RAMOS, MARIO ALBERTO
VELASQUEZ, JORGE DELGADO,
JOSE MARIA SUAZO, CARLOS MENJIVAR,
MARCIAL ANTONIO RUGAMA,
LUIS FERNANDO RAMIREZ,
ALVARO SOTELO, ALVARO
IZAGUIRRE, and JOSE PINEDA
and others similarly situated,

    Plaintiffs,

v.

WEISS & WOOLRICH SOUTHERN
ENTERPRISES, INC., a Florida corporation,
d./b/a C.G.R. CONTRACTORS CO., INC., a
dissolved Florida corporation, C.G.R. CONSTRUCTION,
C.G.R. CONTRACTORS, CO., INC., C.G.R.
CONTRACTING, CO., INC., and
HENRY GEMBALA, individually,

    Defendants.
_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ISSUANCE OF NOTICE OF ACTION AGAINST DEFENDANT C.G.R. CONSTRUCTION CO., INC.

Defendants, Weiss & Woolrich Southern Enterprises, Inc. and Henry Gembala, by and through undersigned counsel, file this response to Plaintiff's Motion for Issuance of Notice of Action Against Defendant C.G.R. Construction Co., Inc., and state:

### BACKGROUND

Unfortunately, Mr. Marban will stop at nothing to attempt to: 1) continue to cause the Defendants to incur attorneys fees; 2) have the Defendants sanctioned (in particular attempting to achieve the striking of their affirmative defenses); and 3) get undersigned counsel sanctioned. In

every case that Mr. Marban has litigated with undersigned counsel he has sought sanctions, see, *e.g.*, *Barrera, et al. v. Weiss & Woolrich Southern Enterprises, Inc., et al.*, Case No. 09-21841-CIV-GRAHAM; *Martinez v. Cancun Grill, Inc.*, Case No. 08-23362-CIV-GRAHAM, and *Galdames v. N & D Investments, Inc.*, Case No. 08-20472-CIV-COOKE, none of which have been granted. It is clear that Mr. Marban believes that it is appropriate to put pressure on the opposing counsel to attempt to force a settlement, and that is not proper litigation conduct.

The Court should also note that this case has been stayed. Incredibly, in violation of the stay order of this Court, Mr. Marban has now sued undersigned counsel personally, and his law firm, for alleged retaliation arising out of this case. *Suchite, et al. v. Kleppin, et al.*, Case No. 10-21166-CIV-MARTINEZ. On the civil cover sheet of *Suchite*, Mr. Marban did not identify this instant case as a related case, but did identify that there was a related case, and cited to *Barrera, et al. v. Weiss & Woolrich Southern Enterprises, Inc., et al.*, Case No. 09-21841-CIV-GRAHAM, apparently because he hoped it would be transferred to Judge Graham rather than this Court. This was clearly improper, because the complaint in *Suchite* makes clear that the alleged retaliation at issue are statements that undersigned counsel made at a court hearing in this case (shortly after the United States Marshal was shot in the District Court of Nevada, where he informed the Court that the Plaintiffs were illegal immigrant workers, who were currently present in the country illegally, because he did not want to be accused of misprision of a felony or harboring or aiding them (providing them with money as part of a settlement, if the case settled), both of which are violations of federal statutes (which are also Bar violations). 18 U.S.C. § 4 (prohibiting "misprision of a felony"); 8 U.S.C. § 1324(a)(1)(A)(iii) (making it a crime to shield unauthorized aliens from detection). Further, there was a significant security concern, since we do not know their real names and they would be entering a United States

courthouse with phony social security numbers and ids. The transcript of the hearing at issue was filed with the complaint in *Suchite*, and referenced at some length in the complaint.

Any such action should not have been filed while the stay is pending. It is clear that any such action should have been brought in this case, the Plaintiffs should have moved to amend the complaint, or otherwise sought whatever relief that they thought they were entitled to in this Court, not in a separate lawsuit. The Plaintiffs did this apparently so that they could revive their stayed case, by beginning a cause of action against the Defendants and their lawyer, without having to worry about it being subjected to a stay. Further, it is apparent that Mr. Marban seeks to drive a wedge between undersigned counsel and the Defendants by naming the Defendants and undersigned counsel and his law firm in the same suit.

The Court should take the foregoing into consideration when it determines how to resolve the instant Motion. It is clear that the instant Motion is without merit, and that long ago Mr. Marban either should have served C.G.R. Construction Co., Inc. (by personal service or by publication), but waited an inordinate amount of time. In fact, the Plaintiffs in this case waited well past the 120 days in which they have to serve C.G.R. Construction Co., Inc. to serve the company, because they could have immediately sought to serve by publication if they really had trouble serving C.G.R. Construction Co., Inc. in Texas, and they should not have had any such problem since they knew the principals of C.G.R. Construction Co., Inc. were in Texas.

The important procedural posture for the instant Motion is as follows: On December 16, 2009, this Court granted the Plaintiffs' Motion to Amend Complaint [D.E. 40], and the next day the Plaintiff filed the Amended Complaint. [D.E. 42]. Plaintiffs waited to add C.G.R. Construction Co., Inc. as a Defendant in this matter until this late date in the litigation, although they knew that it was an employer of the Plaintiffs for a period of time (before September 1,

2007), since at least since October 19, 2009, when they moved to add that entity to the complaint in the *Barrera* case (Case No. 08-21841). [D.E. 92 and 32 in *Barrera*]. In fact, in the answer to the complaint in *Barrera*, filed on November 17, 2009, Defendants stated that C.G.R. Construction Co., Inc. employed the Plaintiff's pre-September 1, 2007. [D.E. 110 in *Barrera*]. Despite these facts, Plaintiffs' counsel repeatedly misrepresented to the Court in *Barrera* that he did not know about C.G.R. Construction Co., Inc. and that it employed the Plaintiffs until Mr. Gembala was deposed in *Barrera* on December 7, 2009. [D.E. 92 and 110 in *Barrera*]. Plaintiffs' counsel wrongly accused (repeatedly) Defendants of misleading them concerning the fact that C.G.R. really employed the plaintiffs before September 1, 2007, and sought severe sanctions (the striking of all affirmative defenses and monetary relief) in the *Barrera* case on that ground. [D.E. 92 in Barrera].[1]

---

[1] The Court should be aware that it appears that this case is frivolous. The Plaintiffs' Complaint purports to seek overtime and off-the-clock hours from 2006-09 [D.E. 1], and the Plaintiffs' Statement of Claim seeks overtime and off-the-clock hours for every week from 2006 to 2009 for most of the Plaintiffs. [D.E. 22]. However, as set forth in Defendants' Motion for Summary Judgment (that is currently stayed), Plaintiffs admitted that they did not work any overtime in 2008 and/or 2009, when work started to slow down. Plaintiffs' counsel, in the Statement of Claim, has stated that the Plaintiffs seek overtime for every week in 2008 and 2009, despite this testimony from Plaintiffs to the contrary. Further, despite the fact that the Plaintiffs testified in the manner in which he did in his deposition, the Plaintiffs have failed to submit an amended statement of claim with the claims of overtime owed for 2008 and 2009 dropped.

Plaintiffs admitted that they have never spoken to anyone even their attorney about hours they worked and how much they are owed, despite the fact that the attorney submitted statements of claim purporting to calculate the Plaintiffs' damages and to state the hours of overtime they worked without proper pay, and for certain time off-of-the-clock, as set forth above. Thus, it appears that Plaintiffs' counsel has completely fabricated out of thin air the Plaintiffs' damages. *The Plaintiffs testified that if anyone wanted to determine the number of hours that they worked in any one week or day, the Defendants' time and pay records would demonstrate that.*

Plaintiffs have all refused to state how much they are going to ask the jury to award them, thus refusing to identify their damages—which appears to be because they do not have any damages as they were paid for all of their overtime, as set forth in the Motion for Summary Judgment. Further demonstrating a refusal to prosecute his case is Plaintiffs' refusals to state what they will settle for, and stated that they refused to settle for $10,000, $25,000, $50,000, or even $100,000.

Additionally, the Plaintiffs are illegal immigrants who are currently in the country illegally. The Supreme Court has held that illegal immigrant workers are not employees for purposes of the National Labor Relations Act, which is a sister statute to the FLSA, because Congress could not have intended for illegal immigrant workers to be considered "employees" under the statute. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). The Supreme Court held this way because it had previously held that

4

At the hearing concerning amending the complaint in this case in mid-December, 2009, contrary to the Plaintiffs' current arguments (which were previously rejected by this Court [D.E. 69]), Mr. Feingold never expressly agreed to accept service, as the transcript specifically indicates that Mr. Feingold only said that he "would assume" that undersigned counsel's firm would accept service. [D.E. 60-1]. Simply put, there is no evidence that Mr. Feingold expressly agreed to anything, and he had no authority to do so.

On January 21, 2010, the Defendant filed a Motion to Compel Defendant C.G.R. Construction Co., Inc. to Answer the Complaint. [D.E. 58]. In short, the Motion sought to compel the Court to rule that Mr. Feingold's statement discussed above required the conclusion that he accepted service on behalf of C.G.R. Construction Co., Inc. (which Plaintiffs seem to re-state in their instant Motion). That Motion, after a hearing on it, was denied on January 27, 2010. [D.E. 69]. Thereafter, on February 12, 2010, the Plaintiffs had a summons issued so that they could try to serve C.G.R. Construction Co., Inc. [D.E. 91]. It is now known why the Plaintiffs waited so long after amending the Complaint (approximately two (2) months) to even

---

the term "employee" in federal statutes must be interpreted in conjunction with the immigration laws, *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 892-93 (1984), and after the passage of the 1986 amendments to the Immigration Reform and Control Act, it was clear that Congress adopted an all-encompassing, comprehensive scheme making it illegal to come into the United States without appropriate documentation and to work here without such documentation. Accordingly, the Defendants moved for summary judgment on this issue, and because there are potential Bar and legal problems with allowing a fugitive from justice to enter a federal courthouse and litigating a case in general, 18 U.S.C. § 4 (prohibiting "misprision of a felony"); 8 U.S.C. § 1324(a)(1)(A)(iii) (making it a crime to shield unauthorized aliens from detection), and because the Supreme Court has said that citizens have a duty to report crime, *Roberts v. United States*, 445 U.S. 552, 557-58 (1980) ("indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship" and reporting criminal activity is a "deeply rooted social obligation."), *Branzburg v. Hayes*, 408 U.S. 665, 696-97 (1972) ("the common law recognized a duty to raise the 'hue and cry' and report felonies to the authorities. . . . It is apparent from this statute [18 U.S.C. § 4 (prohibiting misprision of a felony)], as well as from our history and that of England, that concealment of crime and agreements to do so are not looked upon with favor. Such conduct deserves no encomium."), defense counsel informed the Court about the fact that the Plaintiffs were illegals. For his act of responsible citizenship, he (Chris Kleppin), his law firm, and the Defendants, have been sued by the Plaintiffs (through Mr. Marban) in federal court for alleged retaliation under the FLSA, as set forth in more detail above.

have the Court issue the summons so they could first attempt to serve C.G.R. Construction Co., Inc. According to the Plaintiffs' Return of Service for C.G.R. Construction Co., Inc., the Plaintiff did try to serve that entity on February 17, 18, and 21, 2010. On the Return of Service, it states that the process server actually spoke with Mr. Rebosio (the principle of C.G.R. Construction Co., Inc.) on February 21, 2010, over the telephone and Mr. Rebosio provided his telephone number to the process server, and further informed the process server that he could be served at his home in Texas after March 10, 2010. [D.E. 131-6 at p. 2 of 4]. There is nothing in the record that describes any attempts at service at that address after March 10, 2010, as stated. However, Mr. Rebosio claims that he was present in Texas between March 9, 2010, and the present and could have been served, but was not. (*See Sworn Statement of Carlo Rebosio*, attached hereto as Exhibit 1).

Despite this information, the Plaintiffs decided to try to serve Mr. Rebosio in Coral Springs, Florida on March 5, 2010. [D.E. 131-7 p. 2 of 3]. According to that return of service, Mr. Rebosio no longer maintained a business office at the Coral Springs address listed on the secretary of state's division of corporations information.

Plaintiffs' counsel deposed Mr. Gembala on December 7, 2009 in the *Barrera* case (where he was asked a lot of questions about C.G.R. Construction Co., Inc. and Mr. Rebosio), and in late January 2010 in this case (where he was asked very few), and Plaintiffs' counsel could have deposed him at any time in the *Orellana* case, and Mr. Gembala was deposed in the *Avila* case on March 29, 2010, by lawyers who are friendly with Plaintiffs' counsel and sharing information with him about the lawsuits. Thus, Mr. Gembala has been questioned and can still be questioned concerning Mr. Rebosio, but the Plaintiffs have decided not to do that.

6

Further, the Plaintiff notes that there was an address change on the division of corporations information which shows that the new address (as of February 17, 2010) is 3109 S.W. 15th Street, Deerfield Beach, Florida. The Court should note that the listing of this address is the listing of a mailing address only, and not the listing of a business office, as can be determined from the form itself. Plaintiffs argue that the addition of this new address means that C.G.R. Construction Co., Inc. shares a business office with the other corporate Defendants. The Plaintiffs also argue that sanctions and an evidentiary hearing are warranted under the circumstances. The Plaintiffs quick leap to point fingers and the seeking of sanctions is misplaced, as is their conclusion that because of the mailing address C.G.R. Construction must share an office with the other Defendants. First, the 3109 S.W. 15th Street is not the same address of the Defendants, but it is a different address. Second, the 3109 S.W. 15th Street address is simply a mail box that is on the property (not the same property that the other Defendants have a business office at), though that property is close (it abuts it) to the Defendants' business office. Third, Mr. Gembala did not know that the mail box was being used by C.G.R. Construction Co., Inc. until April 13, 2010, after he was alerted to the fact by Plaintiffs' instant Motion. As Plaintiffs' counsel knows from Mr. Gembala's deposition, the Defendants have used C.G.R. Construction Co., Inc. as a subcontractor for a number of years and continue to so use them from time to time. Mr. Rebosio asked an employee of Weiss & Woolrich if he could use that mailbox to receive mail, because has no other way of receiving mail in South Florida, and the employee said that he could. This fact does not mean that anyone was playing games. It is unknown why the Plaintiffs did not seek to continue to try to serve Mr. Rebosio in Texas, and it is unclear why they did not immediately move to serve by publication here in Florida.

The Court could allow C.G.R. Construction Co., Inc. to be served via Notice of Publication, and once served, that entity will then be under the Court's jurisdiction, and the suit against that entity can either proceed or be part of the stay as is the rest of the case, until the Eleventh Circuit issues its ruling in the consolidated appeals. However, under the circumstances, the Court may very well find that the Plaintiffs were not diligent in filing their summons with the Court, serving Mr. Rebosio in Texas, and/or moving to serve him by publication earlier. Evidentiary hearings, sanctions, and continued argument over this matter are not warranted, and will only cause the needless expenditure of fees in a case that appears to be completely frivolous, and in which there have been enough fees expended already. In fact, for Plaintiffs to argue that Defendants are playing games is wholly misplaced, because the Defendants and/or C.G.R. Construction Co., Inc. cannot stop C.G.R. Construction from being served, as Plaintiffs counsel clearly stated at a hearing that he intends to serve the entity by publication, which is precisely what the instant Motion requests, and that could have been accomplished timely, had the Plaintiffs done so expeditiously. Rather, it appears that the Plaintiffs want to manufacture an issue of game playing with the service in this case. There is absolutely no reason for Defendants or their counsel to engage in any game-playing with service because there really cannot ever be such game-playing with service given that at any time the Plaintiffs can simply serve by publication. Thus, the Plaintiffs hold the trump card with respect to this issue.

The Plaintiffs assert the following arguments: 1) Defendants reneged on their promise to accept service for C.G.R. Construction Co., Inc.; 2) C.G.R. and Weiss & Woolrich are playing games concerning the service on C.G.R. Construction; 3) the games by Weiss & Woolrich are part of a bigger game that was started in the *Barrera* case; 4) implies that the only information concerning Mr. Rebosio was the provision of the address in Coral Springs, 5) C.G.R. did not

8

have any other offices or locations where substitute service could be made; 6) Mr. Rebosio told the process server who tried to serve him in Texas that he was in Florida; 7) at some point, the Plaintiffs process server in Florida was told by someone at the Coral Springs address that C.G.R. Construction did not have an office there anymore; and 8) Defendants should have notified Plaintiffs' counsel that C.G.R. was operating out of their shared office. These arguments, which are completely without merit, will be discussed in turn.

## MEMORANDUM OF LAW

### I. RESPONSE TO PLAINTIFFS' SUBSTANTIVE ARGUMENTS

#### A. The Defendants' Did Not Make Any "Promise"

As set forth above, the Court has already determined that the Defendants did not make a promise to accept service for C.G.R. Construction Co., Inc., and were not authorized to accept service of process on them, when Mr. Feingold said that he assumed service of process would be accepted, as set forth above in detail. The Court denied the Plaintiffs' attempt to compel defense counsel to accept service of process.

#### B. The Defendants and C.G.R. Construction are Not "Playing Games"

As set forth above, no one is playing games concerning service of process. There are no games to play. If service is not able to be effectuated through normal means, the Plaintiff, at any time, could have served C.G.R. Construction Co., Inc. by publication (which it apparently intends to do so in the instant Motion). Thus, there are no games to play. The Defendants cannot do anything to thwart service on C.G.R. Construction, given that service may be made by publication, which Mr. Marban is well aware of. As set forth above, C.G.R. Construction does not have a business office in the same building or on the same land, as the other Defendants, nor is C.G.R. Construction sharing an office with any of the other Defendants, as set forth more fully

9

above. The Plaintiffs have presented no evidence that C.G.R. Construction and the other Defendants share an office, but have only presented evidence that there is a mailbox there.

The document that the Plaintiffs claim demonstrates that Gembala owned C.G.R. Construction at a time when supposedly the other Defendants did not employ the Plaintiffs (see *Motion* at 3), does not demonstrate that, as there has been no foundation laid as to the authenticity of that document, and it is dated in the year 2002, which is way outside of the relevant statute of limitations period of this suit.

Plaintiffs imply that when Plaintiffs were provided with the Coral Springs street address when they were asked to provide the address of C.G.R. Construction, they should not have provided that address because Plaintiffs were not able to successfully serve C.G.R. Construction Co., Inc. there, but the Plaintiffs have not established that Defendants did not in good faith believe that to be C.G.R. Construction's address at the time. Further, the Plaintiffs had the Texas address for Mr. Rebosio. Thus, the Plaintiffs should have served Mr. Rebosio at the Texas address, or should have served via publication months ago. Rather, the Plaintiffs file the instant Motion, seeking to sanction people. Plaintiffs are concerned, rightfully so, that the Court may dismiss C.G.R. Construction for failure to serve process, and appear to be deflecting their own lack of due diligence by pointing fingers at others.

### C. The "Games" Are Not Part of a Bigger Game from the *Barrera* Case

The Plaintiffs claim that the Defendants current "game-playing" is part of a larger game that they are playing in the *Barrera* case. (Motion at 3 n.3) (citing D.E. 52 in Barrera]). If the Court wants to see who is playing games, it should review D.E. 92 and 118 in Barrera, and it will see that Plaintiffs' counsel is misrepresenting to the Court when he learned about C.G.R.

10

Construction Co., Inc.'s involvement with employing the Plaintiffs, and yet he still did move with diligence to add them to this suit, and serve them.

The Plaintiffs argue that Judge Graham had to order Mr. Gembala to allow himself to be served in Barrera. (Motion at 3 n.3). That is not true. Plaintiffs' counsel should be sanctioned for such a misleading argument. Plaintiffs' counsel, right at the deadline to add and to serve additional parties, moved to add Mr. Gembala (and other parties) to the Barrera case. Because Judge Graham's order also required that the added parties be served by the deadline, Plaintiffs' counsel moved the Court seeking more time in which to serve Mr. Gembala. There were no allegations in Barrera that Mr. Gembala was in any way ducking service, which is what the Plaintiffs imply with this argument. Accordingly, the argument is misleading, and should be rejected.

### D. The Only Info Re Rebosio Was Not the Coral Springs Address

Plaintiffs argue that the only information that was given to them was the Coral Springs address, but that is not entirely true, because the Plaintiffs had Mr. Rebosio's Texas address, and the Defendants merely gave the address that they had for C.G.R. Construction. They had no other address for that entity in South Florida, other than the one provided. The mailing address that the Plaintiffs currently play up in their Motion is just that, a mailing address. That is not an address on which service of process can be made of Mr. Rebosio.

### E. C.G.R. Does Not Have Other Offices Were Service Could Be Made

The Plaintiffs argue that the Defendants should have told them that Mr. Rebosio was sharing an office with them, and had Mr. Rebosio served at that address, rather than give them the Coral Springs address, but as stated above the facts are that C.G.R. Construction Co. did not share an office with the other Defendants, and does not currently share an office, but rather only

has a mail box there. In any event, as set forth above, service should have been made by publication months ago. No other address should have been given if the Defendants did not have any other address and/or business office for C.G.R. Construction. Undersigned counsel never notified Plaintiffs' counsel about the address that C.G.R. Construction was using at the other Defendants' address, because he did not know about it, and either did Mr. Gembala until April 13, 2010. Mr. Marban should have had the courtesy to notify undersigned counsel of these developments rather than file a Motion now, at this late hour, seeking to serve by publication and also seeking sanctions. Certainly, before seeking sanctions, Mr. Marban should have had the decency and professional courtesy to speak to undersigned counsel about the situation to properly confer before filing a motion seeking sanctions and evidentiary hearings.

### F. **Rebosio Allegedly Telling the Texas Process Server That He Was in Florida**

It appears from the Plaintiffs' process server's own remarks on the return of service regarding Texas that Mr. Rebosio was cooperating with respect to being served, because it states that he spoke to Mr. Rebosio over the telephone. If Mr. Rebosio wanted to evade service, he would not call the process server and tell him his whereabouts for the next few weeks. (See Exhibit F, D.E. 131-6).

### G. **The Closing of the Coral Springs Office**

The Plaintiffs note that their process server was told that C.G.R. Construction Co.'s Coral Springs office was closed sometime in March, 2010. There is no evidence that Defendants informed Plaintiffs' counsel that C.G.R.'s office was in Coral Springs when they knew it not to be, or even any evidence as to when or whether Defendants knew that that office was closed.

### H. **Defendants Should Not Have Notified About a Shared Office, Because There Was None**

As set forth above, contrary to the Plaintiffs' protestations to the contrary, the Defendants do not share an office with C.G.R., and did not know about the mailbox situation until the filing of Plaintiffs' Motion.

## II. PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF'S COUNSEL FAILED TO CONFER BEFORE IT WAS FILED CONCERNING THE REQUEST FOR SANCTIONS AND AN EVIDENTIARY HEARING

In crafty fashion, the Plaintiffs state that the "[c]o-Defendants neither object nor oppose this Motion as they allege that they have no relation to CGR." (Motion at 5). Plaintiffs' representation in this regard sorely lacks candor to the tribunal. Plaintiffs' counsel did not confer regarding the seeking of sanctions, the setting of evidentiary hearings, or the other issues raised in their instant Motion. Rather, the conferral was only whether the Defendants objected to the Plaintiffs' request to service by publication, and they stated that they do not object to oppose the relief because it does not concern them. For the Plaintiffs to now file the instant Motion seeking far more than just service by publication, and implying misconduct on the part of the Defendants, is misplaced because there was no conferral at all concerning same, and because Plaintiffs' imply to the Court that there was. As stated above, the Plaintiff failed to confer at all before the filing of this Motion concerning relief other than seeking to have service by publication, which is required by Local Rule 7.1.A.3.[2] Plaintiffs' counsel's failure to confer should result in denial of

---

[2] Conferral is a process that is quite involved, and requires considerable time and effort. The courts have held that conferral requires actual communication and consultation. *Hoelzel v. First Select Corp.*, 214 F.R.D. 634 (D. Colo. 2003). The District of Colorado has a similar local rule regarding conferral to the rule in the Southern District of Florida. *Id.* at 635. The *Hoelzel* court noted that actual effective communication is required before a motion to compel is filed, *which typically requires that the parties actually speak and engage in negotiations*. *Id.* In this case, that obligation may be difficult for Plaintiff's counsel to ever satisfy, because he has stated his intention never to speak with defense counsel over the telephone, but rather to only communicate via e-mail. It is extremely frustrating and difficult to limit communication to e-mail during the litigation of a case in federal court. In a situation which is applicable to any type of proposed motion, the court noted as follows:

13

the Plaintiffs' Motion, just as violations of Local Rules typically result in the denial of the relief sought. *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (denying motion for protective order for violating the conferral requirement contained in Local Rule 7.1.A.3); *Dyett v. North Broward Hosp. Dist.*, 2004 WL 5320628, *1 (S.D. Fla. 2004) (denying motion for attorneys fees for failing to follow Local Rule 7.3); *Damon v. Fleming Supermarkets of Florida, Inc.*, slip op. (Case No. 97-0230-CIV-LENARD) (S.D. Fla. Jan. 9, 1999) (adopting report and recommendation of Magistrate Brown striking motion to tax costs from the record for defendant's failure to file certificate of conferral as required by Local Rule 7.3); *Longariello v. School Bd. of Monroe County*, 1996 LEXIS 21661, at *6 (S.D. Fla. 1996) (denying motion for summary judgment in part upon movant's failure to comply with Local Rule 7.5 by not filing a concise statement of facts); *Hoglund v. Limbach Constructors, Inc.*, 1998 LEXIS 8577 at *9-14 (S.D. Fla. 1998) (holding that a party's failure to comply with clear mandate of Local Rule 26.1.G.6(b) constituted waiver of party's privilege objection over production of her diary); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329-30 (6th Cir.), *cert. denied*, 414 U.S. 858 (1973)

---

> Rule 7.1.A serves a particularly important function in connection with discovery disputes because the parties, through negotiations, frequently are able to narrow the discovery requests in a way which eliminates the need for judicial intervention. . . . Without meaningful negotiations by the parties, the courts would be flooded with discovery motions.

*Id.* The court further noted that "the [conferral] requirement is not satisfied by a party making a demand for compliance." *Id.* The court further noted that "[t]o confer means "'to hold a conference; compare views; consult together.'" *Id.* (quoting *The American Heritage Dictionary of the English Language* 278-79 (9th ed. 1971)). The court held that "[t]he rule is not satisfied by one party sending a single e-mail to another party", and noted that at least one other court was in agreement with that holding. *Id.* (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996). Further, the court noted that one court found that there was not meaningful conferral because even though there were four telephone calls and two letters, the court found that the quality of the conferral was not meaningful. *Id.* (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456 (D. Kan. 1999)). In this case, the Defendants request that the Court find that Plaintiff's failure to confer before filing the Motion concerning the issues that 90% of the Motion pertains to, should warrant denial of the Plaintiffs' Motion. It is without merit and unbecoming a member of the Florida Bar for Plaintiff's counsel to seek sanctions

(holding that the district court properly denied a motion to compel for failure to adhere to the requirement of the local rules that the moving party must "notify the court of its attempts to resolve the controversy").

Moreover, the courts, including the former Fifth Circuit in a binding opinion, have issued strong language to the effect that a court's local rules are more than mere inconveniences, but rather must be obeyed. *Wirtz v. Hooper-Holmes Bureau, Inc.*, 327 F.2d 939, 943 (5th Cir. 1964) (stating that "Local Rules for the conduct of trial courts are desirable and necessary, and such rules should not be ignored or declared invalid except for compelling reasons"); *Wiss v. Weinberger*, 415 F. Supp. 293, 294 n.4 (E.D. Pa. 1976) (stating that "non-compliance with any local rule is a practice to be *strongly condemned* and one which will be penalized if the circumstances warrant such action") (emphasis in original). The Plaintiffs' violations of Local Rules 7.1.A.3(a) require that their Motion be denied.

Because the Plaintiff did not confer before the filing of his Motion, it should be denied. Local Rule 7.1.A.3 requires actual conferral or a reasonable attempt at conferral. No actual conferral occurred, and no attempt at conferral was made.

---

(attorneys fees and an injunction) like this against another lawyer without ever even bothering to first consult with that lawyer.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 20, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Eddy O. Marban, Esq., The Law Offices of Eddy O. Marban, Ocean Bank Building, Suite 350, 782 N.W. LeJeune Road, Miami, Florida 33126) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

    Glasser, Boreth & Kleppin
    Attorneys for Defendants
    8751 W. Broward Blvd.
    Suite 105
    Plantation, FL 33324
    Tel.  (954) 424-1933
    Fax  (954) 474-7405
    E-mail:  Glabor@aol.com

    By:___s/Chris Kleppin_____
        Chris Kleppin
        Fla. Bar No. 625485